UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **SANTANNA BIRDLONG** | **CASE NO.  6:25-CV-00635** |
| **VERSUS** | **JUDGE DAVID C. JOSEPH** |
| **BIOLIFE PLASMA SERVICES LP** | **MAGISTRATE JUDGE CAROL B. WHITEHURST** |

## REPORT AND RECOMMENDATION

Before the Court is BioLife Plasma Services, LLC's ("BioLife") Motion to Dismiss pursuant to Rule 12(b)(6).  (Rec. Doc. 11).  Plaintiff failed to file an opposition to the Motion.  The Motion was referred to the undersigned magistrate judge for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of this Court.  Considering the evidence, the law, and the arguments, or lack thereof, of the parties, and for the reasons fully explained below, it is RECOMMENDED that BioLife's Motion to Dismiss, while not without merit, be DENIED WITHOUT PREJUDICE at this time.

### Factual Background

Plaintiff, a current employee of BioLife, filed a charge with the Equal Employment Opportunity Commission ("EEOC") against BioLife on February 18, 2025. (Rec. Docs. 1, 11-1, p. 8, & 11-3).  Plaintiff received a "right to sue" letter; however, no specifics or dates were given.  (Rec. Doc. 1, ¶ 19).  Plaintiff initiated

the present action on May 9, 2025, pursuant to Title VII of the Civil Rights Act of 1964 seeking damages and injunctive relief alleging discrimination and retaliation. (Rec. Doc. 1). On August 29, 2025, BioLife filed the Motion to Dismiss (Rec. Doc. 11) presently before the Court.

According to the Complaint, BioLife is "a plasma donation company with several centers across the [United States] that "allows qualified donors to donate plasma and receive compensation." (Rec. Doc. 1, ¶ 4). Plaintiff alleges an internal investigation was launched at BioLife's Lafayette, Louisiana location on July 20, 2024, after she made a report to the company's Ethics Reporting Helpline regarding "deletion and/or destruction of pertinent donor records" by Medical Support Specialists ("MSS") in violation of the company's standard operating procedures ("SOP"). (Rec. Doc. 1, ¶ 6). Plaintiff says she made this report after her reports to the Center Manager and Center Quality Manager were disregarded. (*Id.*). On July 24, 2024, Plaintiff notified the Center Quality Manager that one MSS was bullying another MSS and Plaintiff was concerned she would "be the next target to be bullied" because she "refused to engage in the malice acts with the MSS accused of bullying." (*Id.* at ¶ 7). Per Plaintiff, no corrective action was taken in response to her report. (*Id.*).

On September 25, 2024, Plaintiff was called in to meet with the Center Manager and Center Quality Manager to discuss her work productivity where she was informed that more than one MSS complained about her not completing certain tasks on September 19, 2024. (*Id.* at ¶ 8). Plaintiff alleges she was able to prove that she worked her entire shift and informed them that this was an example of the previously reported bullying. (*Id.*) Again, no corrective action was taken. (Rec. Doc. 1, ¶ 8).

Following this meeting, Plaintiff alleges that the Center Manager and Center Quality Manager "cleared a possibly mentally unstable donor to donate." (*Id.* at ¶ 9). Plaintiff alleges they refused to listen to her when she suggested that the donor likely needed a reassessment to ensure no risk to his safety or others who receive plasma derived therapies. (*Id.*). Per Plaintiff, the donor was cleared to continue donating without any corrective actions taken. (*Id.*).

On September 28, 2024, Plaintiff says she reported acts of bullying from an MSS to the Center Manager. (*Id.* at ¶ 11). Plaintiff says "[t]his caused an exacerbation of [her] mental health symptoms resulting in [her] need to leave work early. No reprimand was issued to this MSS, and the MSS was granted approval to leave work early on said date leaving the center understaffed causing a hardship on the company and the donor's wait time in the center." (*Id.*).

On or around October 2, 2024, all available MSSs attended a mandatory quarterly meeting. (Rec. Doc. 1, ¶ 12). Per Plaintiff, the possibly mentally unstable donor who was cleared to donate was discussed, and Plaintiff again questioned this decision. (*Id*.). According to Plaintiff, on October 25, 2024, she experienced a panic attack but was unable to call out due to the procedure for calling out. (*Id*. at ¶ 13). After arriving at work, Plaintiff was issued an Employee Conference Memorandum ("ECM") for "misconduct in the [October 2, 2024] mandatory meeting…" (*Id*.). Plaintiff signed the form but noted that she did not agree with it and informed the Center Manager that she "felt as thought [she] was being discriminated and retaliated against due to the several illegal and unethical issues [she] reported." (*Id*.). In the days after receiving the ECM, Plaintiff questioned it and reported additional bullying by an MSS, but not corrective action was taken. (*Id*. at ¶ 15).

Plaintiff alleges that she was finally forced to apply for "several different leave types within the company's leave platform" due to her steady decline in mental health. (Rec. Doc. 1, ¶ 16). The Center Manager "refused to allow [Plaintiff] the specified time off" due to staffing shortages. (*Id*.). Over the next several weeks, Plaintiff says she had several conversations with the Center Manager regarding ongoing bullying and the ECM, but alleges she was not supplied "an answer to any of [her] questions." (*Id*. at ¶ 17). Plaintiff has since received clearance from her medical provider for medical leave "[a]fter months of enduring a decline in [her]

mental health status and [the Center Manager] denying [her] requested time off." (*Id*. at ¶ 18).

Plaintiff believes the Center Manager "has shown various acts of favoritism" towards other MSSs and fears that the Center Manager "is making attempts to keep [her] quiet about reporting pertinent information…" (*Id*. at ¶ 20). Plaintiff contends all of these actions, and/or inactions, constitute discrimination and retaliation under Title VII. (Rec. Doc. 1).

## Applicable Law

### I. Leniency for *Pro Se* Litigants

Plaintiff is not represented by counsel. The pleadings of *pro se* litigants are held to a more lenient standard than those of attorneys and are construed liberally to prevent a loss of rights that might result from inartful expression. *Taylor v. Books A Million, Inc*., 296 F.3d 376, 378 (5th Cir. 2002); *Cledera v. United States*, 834 Fed. App'x 969, 972 (5th Cir. 2021) (citing *Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006)). However, *pro se* plaintiffs are required to plead factual allegations that rise above a speculative level, and courts should not create causes of action where none exist. *Chhim v. University of Texas at Austin*, 836 F.3d 467, 469 (5th Cir. 2016); *see also, Taylor v. Books A Million, Inc*., 296 F.3d at 378; *Cledera v. United States*, 834 Fed. App'x at 972). A *pro se* litigant should ordinarily be offered an opportunity to amend his complaint before it is dismissed but leave to amend is not required if

an amendment would be futile, or if, in other words, an amended complaint would still fail to survive a Rule 12(b)(6) motion to dismiss. *Mendoza-Tarango v. Flores*, 982 F.3d 395, 402 (5th Cir. 2020); *Marucci Sports, L.L.C. v. NCAA*, 751 F.3d 368, 378 (5th Cir. 2014). Furthermore, *pro se* litigants have "no license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets." *Farguson v. MBank Houston, N.A.*, 808 F.2d 358, 359 (5th Cir. 1986). Litigants who abuse the judicial process are "not entitled to sue and appeal without paying the normal filing fees – indeed, are not entitled to sue and appeal, period." *Free v. United States*, 879 F.2d 1535, 1536 (7th Cir. 1989).

## II. <u>Law applicable to Rule 12(b)(6)</u>

When considering a motion to dismiss for failure to state a claim under F.R.C.P. Rule 12(b)(6), the district court must limit itself to the contents of the pleadings, including any attachments and exhibits thereto. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000); *U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 375 (5th Cir. 2004). The court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff. *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotations omitted) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). However, conclusory allegations and unwarranted deductions of fact are

not accepted as true, *Kaiser Aluminum & Chemical Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982) (citing *Associated Builders, Inc. v. Alabama Power Company*, 505 F.2d 97, 100 (5th Cir. 1974)); *Collins v. Morgan Stanley*, 224 F.3d at 498. Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

To survive a Rule 12(b)(6) motion, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic*, 127 U.S. at 570. The allegations must be sufficient "to raise a right to relief above the speculative level," and "the pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id.* at 555 (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004)). "While a complaint . . . does not need *detailed* factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citations, quotation marks, and brackets omitted; emphasis added). *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If the plaintiff fails to allege facts sufficient to "nudge[ ][his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." *Bell Atlantic v. Twombly*, 127 U.S. at 570.

A claim meets the test for facial plausibility "when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. at 678. "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Therefore, "[t]he complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009) (quoting *Bell Atlantic v. Twombly*, 127 U.S. at 556). *See also In Re Southern Scrap*, 541 F.3d 584, 587 (5th Cir. 2008).

### III. Title VII Discrimination and Retaliation

Pursuant to Title VII, "it shall be an unlawful employment practice for an employer to ... discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). An employer's action will be found unlawful if the employee can demonstrate that their protected class was a "motivating factor" for an adverse employment action, even if the employer was also motivated by other lawful factors. *Vaughn v. Woodforest Bank*, 665 F.3d 632, 636 (5th Cir. 2011) (citing 42 U.S.C. § 2000e-2(m)).

Title VII also forbids an employer from retaliating against an employee who files a charge of discrimination or participates in an investigation of discrimination. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 59, (2006). Title VII retaliation requires a plaintiff to establish that (1) he participated in protected activity under Title VII; (2) his employer took an adverse action; and (3) a causal connection exists between the protected activity and adverse employment action. *See McCoy v. City of Shreveport*, 492 F.3d 551, 556-57 (5th Cir. 2007).

The protected statuses under Title VII are race, color, religion, sex, or national origin. In her Complaint, Plaintiff alleges she was discriminated and retaliated against. (Rec. Doc. 1). However, nowhere does Plaintiff allege discrimination based on race, color, religion, sex, or national origin. Plaintiff also does not allege that she was participating in protected activity under Title VII when she was allegedly retaliated against. Rather, Plaintiff alleges she was "being discriminated and retaliated against due to the several illegal and unethical issues [she] reported." (Rec. Doc. 1, ¶ 13). While not attached to her Complaint, Plaintiff does reference her EEOC Charge of Discrimination, and it was attached to BioLife's Motion to Dismiss. (Rec. Docs. 1, ¶ 19 & 11-3).

Generally, in ruling on a motion pursuant to F.R.C.P. Rule 12(b)(6), the court is limited to the contents of the pleadings and the documents attached thereto; however, the court may refer to documents attached to a motion to dismiss if they

are referenced in the complaint and central to the plaintiff's claims. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 499 (5th Cir. 2000). In so attaching such documents, the defendant has "merely assist[ed] the plaintiff in establishing the basis of the suit, and the court in making the elementary determination of whether a claim has been stated." *Id*. Because the Court finds that the EEOC Charge of Discrimination attached to BioLife's Motion is referenced in the Complaint and is central to Plaintiff's claims, the Court will consider it in addition to Plaintiff's Complaint.

In her Charge of Discrimination, in relevant part, Plaintiff alleged she "received a write up for misconduct on 10/25/24 because [she] reported [her] managers as well as coworkers to HR for lying, discrimination and not adhering to company polices, procedures." (Rec. Doc. 11-3, p. 2). Plaintiff alleged that she had "no previous write ups, memos to file, etc. and [has] always been praised for [her] positive attitude, willingness to work and good customer service skills." (*Id*.). Plaintiff said that no reason was given for the action taken against her and she believed that she had been retaliated against in violation of Title VII. (*Id*.).

Again, nowhere in her EEOC Charge of Discrimination does Plaintiff allege discrimination based on race, color, religion, sex, or national origin or that she was participating in protected activity under Title VII when she received the employee

conference memorandum for misconduct. Accordingly, the Court recommends that Plaintiff's claims be dismissed.

## IV. <u>Amendment</u>

"District courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner which will avoid dismissal." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002). The court in its discretion may disallow amendment if the amendment would be futile. *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014). "Futility is determined under Rule 12(b)(6) standards, meaning an amendment is considered futile if it would fail to state a claim upon which relief could be granted." *Legate v. Livingston*, 822 F.3d 207, 211 (5th Cir. 2016). "[A] district court is not obligated to grant a futile motion to amend, for instance, when 'the plaintiff has already pleaded his best case.'" *Hernandez v. W. Texas Treasures Est. Sales, L.L.C.*, 79 F.4th 464, 468 (5th Cir. 2023), quoting *Brewster v. Dretke*, 587 F.3d 764, 768 (5th Cir. 2009).

The Court finds that it would be inequitable to dismiss Plaintiff's claims without allowing her an opportunity to remedy the sparseness of the factual allegations set forth in the Complaint as noted above.

## **Conclusion**

For the reasons discussed herein, the Court recommends that BioLife's motion, while not without merit, should be **DENIED WITHOUT PREJUDICE** at this time to allow Plaintiff, within **fourteen (14) days** of the entry of the Court's ruling on this report and recommendation, the opportunity to amend her Complaint to cure the deficiencies as provided in the foregoing analysis. Thereafter, BioLife may to reurge their motion to dismiss if warranted.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error.  See *Douglass v. United Services Automobile Association*, 79 F.3d

1415 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. §636(b)(1).

THUS DONE in Chambers, Lafayette, Louisiana on this 24th day of November, 2025.

_____
CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE